******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JPMORGAN CHASE BANK, N.A. *v.* J. MAURICE
HERMAN
(AC 38126)

Lavine, Keller and Bishop, Js.

*Syllabus*

The plaintiff bank, which previously had obtained a judgment against the
defendant in Florida that remained unsatisfied, filed an application for
an order in aid of execution of the foreign judgment. The plaintiff had
served interrogatories on the defendant in aid of execution under Florida
law, seeking information concerning any trusts in which the defendant
held an interest, and a hearing thereon was held in Florida. Thereafter,
the plaintiff registered its Florida judgment in Connecticut pursuant to
the Uniform Enforcement of Foreign Judgments Act (§ 52-604 et seq.),
and submitted an application for a turnover order to the trial court, in
which it alleged that the defendant held an interest in a certain trust
and that the trust's assets were held in a brokerage account located in
Stamford, Connecticut. The application also identified UBS Financial
Services, Inc., as the garnishee. The plaintiff then requested the trial
court to issue an order compelling the defendant and the broker from
UBS to transfer to the levying officer, inter alia, the defendant's market-
able securities held by UBS, including without limitation, the assets in
the trust. The defendant filed an objection to the plaintiff's application,
asserting that the court lacked personal jurisdiction over the matter
because UBS did not have physical possession of the certificates of the
securities held by the trust as they were in the possession of a depository
company in New York and, therefore, the plaintiff was not entitled to
execute on those assets. In response, the plaintiff asserted that the court
had in rem jurisdiction because, pursuant to the statutory provision
(§ 42a-8-112 [c]) of the Uniform Commercial Code, the location of the
broker rather than the location of the securities certificates determines
the situs of the assets. At the hearing on the application for a turnover
order, the court admitted an account statement for the trust that listed
a Connecticut address for the broker, and the undisputed evidence
presented at the hearing identified the broker's Stamford office as UBS.
At the conclusion of the hearing, the court orally granted the application
and, thereafter, issued a written turnover order, directing UBS, to trans-
fer the defendant's marketable securities to the levying officer. The
defendant then filed an appeal with this court. *Held*:

1. The defendant could not prevail on his claim that the trial court improperly
exercised personal jurisdiction over him because he had no significant
contacts with Connecticut and the mere presence of his broker in the
state was insufficient to confer jurisdiction, as the certificates of the
subject securities were physically located in New York: under the cir-
cumstances of this case, the court's exercise of personal jurisdiction
over the defendant was fair because the merits of the underlying action
were fully and fairly litigated in Florida and thus the plaintiff was the
holder of a valid money judgment, and because the trust account was
managed by a financial officer in UBS's Connecticut office, it was reason-
able to conclude that the office would readily exercise control over the
defendant's assets, it would have been fruitless to direct the turnover
order directly to the depository company in New York, and it was the
defendant's decision to evade the judgment debt for several years and
to employ the services of a Connecticut broker with control over the
subject securities; moreover, this court was not persuaded by the defen-
dant's arguments that the plaintiff's evidence showing that a Connecticut
broker managed the subject account was stale and that the trial court
improperly excluded from evidence an affidavit offered by the defendant
to demonstrate the court's jurisdiction, as the defendant had offered no
admissible evidence that, at the time the application for a turnover order
was submitted, the account was no longer managed by a Connecticut
broker, and the court did not abuse its discretion in failing to consider
the defendant's affidavit, as the defendant offered no rationale why his
affidavit was not hearsay or why it fell within a hearsay exception.

2. This court found unpersuasive the defendant's claim that the trial court's turnover order improperly deviated from its oral ruling granting the plaintiff's application for the order because the order should have been directed to UBS's Stamford office instead of to UBS in general and should have expressly limited execution to the assets in the trust account; the trial court's turnover order, directing UBS to transfer the defendant's marketable securities was appropriate, as the plaintiff's application identified UBS as the garnishee, the undisputed evidence presented at the hearing on the application identified the broker's Stamford office as UBS, and there was no indication that the broker's office in Stamford was its own corporation or other legally distinct entity, and the court's order in its oral ruling, that service of process be directed to the broker's Stamford office was not inconsistent with the turnover order because the order did not address how and where process was to be served; moreover, although the court's oral ruling directing the broker to transfer the defendant's marketable securities, "including without limitation" those in the trust, was ambiguous, any ambiguity was resolved by the court's written order, which directed UBS to transfer cash and marketable securities.

Argued February 15—officially released August 22, 2017

*Procedural History*

Application for execution and order in aid of a foreign judgment, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Heller, J.*; judgment for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Jack Kallus*, with whom were *Shivani Desai* and, on the brief, *John W. Cannavino, Jr.*, for the appellant (defendant).

*Matthew Triggs*, with whom were *Kelley Franco Throop* and, on the brief, *Lisa Markofsky*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant, J. Maurice Herman, appeals following the trial court's issuance of a turnover order pursuant to General Statutes § 52-356b. The plaintiff, JPMorgan Chase Bank, N.A., applied for the order. The defendant claims that (1) the court improperly exercised personal jurisdiction over him, and (2) the order improperly deviated from the court's prior oral ruling granting the plaintiff's application.[1] We disagree. Accordingly, we affirm the judgment of the trial court.

On the basis of the evidence presented and the parties' representations, the following facts are not in dispute. The plaintiff was the defendant's broker. Some years ago, that relationship soured, and the parties became embroiled in an action in Florida. The record discloses neither the date of commencement nor the precise nature of the litigation. On April 28, 2011, the Florida court rendered judgment in favor of the plaintiff, and later awarded the plaintiff attorney's fees and costs totaling $259,539.96, with interest continuing to accrue. The defendant thereafter exhausted his appeals in the Florida courts.

On March 26, 2014, while the judgment was still unsatisfied, the plaintiff served on the defendant interrogatories in aid of execution under Florida law. The interrogatories directed the defendant to provide, inter alia, information concerning any trusts in which he held an interest. In his answers to the interrogatories, the defendant indicated that he held an interest in a "bilateral trust" (trust) in which he was settlor, trustee, and beneficiary. He further stated that the trust "[d]oes business under the fictitious name Marstack & Co.," "[the trust's] [a]ssets are owned by Marstack & Co. and are located in Connecticut," and "[t]he broker is David Watkins from UBS [Financial Services, Inc. (UBS)] in Westport, Connecticut."

On October 17, 2014, a proceeding in aid of execution was held in Florida Circuit Court. At the hearing, the defendant testified under oath that the trust held assets worth approximately $120 million, and that those assets were still being held in the Connecticut UBS account. The defendant further testified: "I cannot tell you with absolute certainty where [the] securities are registered, but it is a Connecticut account. If you were to look at the [Depository Trust Company],[2] all of their assets are held in New York, and that's where all securities—or virtually all securities are held by the member banks. So, I can't speak to the legal logistics as to how securities are held, but it's Connecticut or—and/or New York."

On February 13, 2015, the plaintiff registered its Florida judgment in Connecticut pursuant to the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq. On May 6, 2015, the plaintiff submit-

ted its application for a turnover order (order) to the trial court. General Statutes § 52-356b, the turnover statute, sets forth a postjudgment procedure permitting a judgment creditor to "(a) . . . apply to the court for an execution and an order in aid of the execution directing the judgment debtor, or any third person, to transfer to the levying officer[3] either or both of the following: (1) Possession of specified personal property that is sought to be levied on; or (2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on." "The court may issue a turnover order pursuant to [this section], after notice and hearing . . . on a showing of need for the order." General Statutes § 52-356b (b). In its application for the order, the plaintiff asserted that the defendant held an interest in the trust and that the trust's assets were held in a UBS brokerage account located in Connecticut. The plaintiff therefore requested that the court issue an order compelling the defendant and UBS to "transfer to the levying officer cash or marketable securities held by UBS in the name of or for the benefit of [the defendant], including without limitation, the assets in the [trust] . . . sufficient to satisfy [the plaintiff's] judgment . . . ."

The defendant filed an objection to the application in which he asserted that the court lacked personal jurisdiction in the matter because UBS's Connecticut branch did not have physical possession of the certificates of the securities held by the trust. The defendant claimed that those certificates were in the possession of the aforementioned Depository Trust Company (Depository Trust); see footnote 2 of this opinion; in New York. He, therefore, argued that the securities had a New York situs[4] and, accordingly, that the plaintiff was not entitled to execute on those assets in Connecticut.

The plaintiff countered that the court had in rem jurisdiction[5] because, under article 8 of the Uniform Commercial Code (UCC); General Statutes § 42a-8-101 et seq.; the location of the broker—in this case, Connecticut—rather than the location of the securities certificates, determines the situs of the assets. See General Statutes § 42a-8-112 (c).

The court held a hearing on the application on June 22, 2015. During the hearing, the parties relied on the foregoing facts and arguments. The court also admitted evidence at the hearing. In addition to the answers to the interrogatories and a transcript of the proceeding in aid of execution, the court admitted an account statement for the trust. The statement provided a Stamford address for UBS, and also listed Watkins as the financial advisor.

At the conclusion of the hearing, the court orally granted the application. In so doing, the court reasoned: "I don't believe that it is the obligation of [the plaintiff] or any other creditor to [serve the Depository Trust].

[The Depository Trust], frankly, would have to have a legal department of 5000 lawyers if [it] had to litigate every time somebody had to attach a brokerage account by some individual debtor." A written turnover order directed at UBS followed. The defendant then filed the present appeal. Additional facts will be discussed in the context of our analysis.

I

The defendant's first claim is that the court improperly exercised personal jurisdiction over him. We disagree.

At the outset, we need to clarify what the defendant is and is not arguing. The defendant is not attacking the judgment by arguing that the *Florida* court was without personal or subject matter jurisdiction, which is the typical method by which a party defends against the enforcement of a foreign judgment. See, e.g., *Cahaly* v. *Somers*, 89 Conn. App. 816, 820, 877 A.2d 837, cert. denied, 275 Conn. 910, 882 A.2d 669 (2005). Nor does the defendant dispute that the trial court had jurisdiction over UBS, to the extent that it has offices in Connecticut. Instead, the defendant challenges only the personal jurisdiction of the courts of *this state* over *him*. The defendant argues that Connecticut lacks personal jurisdiction over him because he has never been to this state, owns no property here, and has not otherwise availed himself of the state such that haling him into court here would not violate due process. As previously mentioned, he contends that the mere presence of his broker here, a fact that he also disputes, as discussed later in this opinion, is insufficient to confer personal jurisdiction because the target of the present action—the defendant's securities—have certificates that are physically located in New York. Our review of this claim is plenary. See *Walshon* v. *Ballon Stoll Bader & Nadler, P.C.*, 121 Conn. App. 366, 371, 996 A.2d 1195 (2010).

"The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe* [*Co.* v. *Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)]." *Shaffer* v. *Heitner*, 433 U.S. 186, 207, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). "[I]f [a defendant] be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) *International Shoe Co.* v. *Washington*, supra, 316.

The preceding standard, however, does not apply in the same manner to postjudgment enforcement proceedings like the one in this case. The United States Supreme Court has stated: "[W]e know of nothing to justify the assumption that a debtor can avoid paying

his obligations by removing his property to a State in which his creditor cannot obtain personal jurisdiction over him. The Full Faith and Credit Clause, after all, makes the valid in personam judgment of one State enforceable in all other States." (Footnote omitted.) *Shaffer* v. *Heitner*, supra, 433 U.S. 210. Accordingly, "[o]nce it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter." Id., 210 n.36. Thus, to the extent that the defendant argues that personal jurisdiction is lacking because his contacts with Connecticut would be insufficient to commence the *original* action here, he is mistaken.

Nevertheless, it seems axiomatic that there at least *be* property in the jurisdiction where postjudgment enforcement is sought. See *Electrolines, Inc.* v. *Prudential Assurance Co.*, 677 N.W.2d 874, 885 (Mich. App. 2003). When that property is real or tangible personal property within the borders of the enforcing jurisdiction, it is presumptively fair for the judgment creditor to attempt to levy that property, even if the property is the judgment debtor's only connection with the jurisdiction. See *Bank of Babylon* v. *Quirk*, 192 Conn. 447, 450, 472 A.2d 21 (1984); *Ruiz* v. *Lloses*, 233 N.J. Super., 608, 611, 559 A.2d 866 (App. Div. 1989); see also A. Simowitz, "Siting Intangibles," 48 N.Y.U.J. Int'l L. & Pol. 259, 297 (2015) (presence of tangible asset in jurisdiction "serves as a prima facie basis on which a court can say that it sets the agenda for . . . that particular asset"). For example, in *Bank of Babylon* v. *Quirk*, supra, 447, the plaintiff secured a default judgment against the defendant in New York. The defendant, a resident of Tennessee, had a boat docked in Connecticut. Id., 449. The plaintiff brought the judgment to Connecticut and, thereafter, attached the boat in order to satisfy the judgment debt. Id., 447, 449. The defendant moved to dismiss the action for lack of personal jurisdiction, which the trial court granted. Id., 447–48. Our Supreme Court reversed the judgment. Id., 450. Relying in part on *Shaffer*, the court concluded: "Having been given fair notice and an opportunity to defend the action on the merits in the state of New York, the defendant cannot be heard to complain because the plaintiff seeks to enforce that judgment against any of his property situated in this state." Id.

The nature of the property in the present case, however, does not lend itself to as straightforward an analysis. Accordingly, before proceeding with our analysis, we need to present some background on the property at issue, as well as on the statutory scheme governing claims to that property.

As noted previously, the court admitted into evidence an account statement for the trust. The statement showed that, as of May 30, 2014, the assets in the trust had a value of over $130 million, about $118 million of which was in municipal securities. The evidence also showed, in the form of a letter from UBS's Stamford office addressed to the defendant, that UBS observed the following policy: "UBS Customer securities are not held at UBS branches or offices with the exception of physical certificates that are in the process of being transferred to or from a customer. Most securities are held at [Depository Trust] . . . in 'Street Name', an SEC-approved depository located [in New York]. This means that UBS Financial Services [Inc.] has an account at [Depository Trust], and [Depository Trust] knows UBS Financial Services as the owner of the securities, while UBS Financial Services keeps the record of the customers who are the beneficial owners of the securities." The defendant represents on appeal, as he did before the trial court, that the trust assets are, and always have been, "physically located" at the Depository Trust in New York. For purposes of this appeal, we assume the same.

This manner of holding securities is known as the indirect holding system. See Uniform Commercial Code, art. 8, prefatory note. "Holding securities indirectly means 'ownership' is evidenced by book-entries in accounts maintained by securities intermediaries. It is often referred to as holding securities in 'street name.' An intermediary holds such securities directly by being the person in possession of the security certificate or the person to whom the security is registered on the books of the issuer. The owners holding indirectly are sometimes referred to as beneficial owners . . . ." R. Hakes, "UCC Article 8: Will the Indirect Holding of Securities Survive the Light of Day?," 35 Loy. L.A. L. Rev. 661, 664 n.2 (2002). In part because of the complexities posed by the claims of creditors to such indirectly held securities, the drafters of the UCC in 1994 revised article 8, which deals with investment securities. Uniform Commercial Code, art. 8, prefatory note. Connecticut has adopted the UCC's revised article 8. See General Statutes § 42a-8-101 et seq.

The provision of revised article 8 relevant to this case is codified in General Statutes § 42a-8-112 (c), which provides in relevant part: "The interest of a debtor in a security entitlement may be reached by a creditor only by legal process upon the securities intermediary with whom the debtor's securities account is maintained . . . ." Put simply, "[i]f Debtor holds securities through Broker, and Broker in turn holds through Clearing Corporation, Debtor's property interest is a security entitlement against Broker. Accordingly, Debtor's creditor cannot reach Debtor's interest by legal process directed to the Clearing Corporation." Uniform Com-

mercial Code, art. 8, § 8-112, comment 3. Instead, process must be directed "to the debtor's own security intermediary." Id.

In the context of this case, the defendant holds a "security entitlement" in the securities in the UBS account because the Depository Trust holds the securities certificates, which are in the name of UBS. See General Statutes § 42a-8-102 (a) (16). The defendant is therefore an "entitlement holder;" see General Statutes § 42a-8-102 (a) (8); and UBS a "securities intermediary." See General Statutes § 42a-8-102 (a) (13). Thus, under § 42a-8-112 (c), process must be directed to UBS, not to the Depository Trust. The reason for this is readily apparent: as confirmed by UBS's own policy, the Depository Trust knows only *UBS*, not the defendant, as the legal owner of the securities.

Article 8 of the UCC does not purport to address the personal jurisdiction issues associated with creditors' claims to indirectly held securities. Nevertheless, we conclude that the operation of article 8 in this case satisfies the requirements of personal jurisdiction. The test for whether a court properly invokes personal jurisdiction is essentially one of "reasonableness or fairness." (Internal quotation marks omitted.) *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). "[T]he defendant's contacts with the forum [s]tate must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) Id. In other words, the defendant "must reasonably anticipate being haled into court there . . . ." (Internal quotation marks omitted.) *Calder* v. *Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Recall also that "the requirement of contacts may be greatly relaxed . . . where a plaintiff is suing a nonresident defendant to enforce a judgment procured in another State." *World-Wide Volkswagen Corp.* v. *Woodson*, supra, 309 n.14 (Brennan, J., dissenting), citing *Shaffer* v. *Heitner*, supra, 433 U.S. 210–11 nn.36 and 37. Under the circumstances of this case, the court's exercise of jurisdiction over the defendant was fair.

We conclude so for several reasons. The merits of the underlying action were fully and fairly litigated in Florida. Consequently, the plaintiff is the holder of a valid money judgment. The defendant has, for several years and notwithstanding his substantial means, evaded the judgment debt. Indeed, at the aforementioned proceeding in aid of execution in Florida, the defendant pledged to "do everything I possibly can to make sure [the plaintiff] never [gets] paid legally." The defendant then essentially directed the plaintiff to obtain relief in Connecticut. Not only was UBS's Stamford office a "securities intermediary" under § 42a-8-102 (a) (13) by virtue of the fact that UBS in general was a securities intermediary, but the trust account was

managed personally by a financial advisor working out of UBS's Stamford office.[6] It is reasonable to conclude that that office would be able to readily exercise control over the defendant's assets, and, therefore, to comply with a turnover order. We also observe that, as previously explained, directing a turnover order directly to the Depository Trust would be fruitless. The defendant objects to being haled into what he deems an inconvenient jurisdiction, but it was his decision to evade the judgment debt and to employ the services of a Connecticut broker with control over the defendant's leviable property.

As a final matter, we may briefly dispose of the defendant's remaining arguments in support of this claim. We are not persuaded that the plaintiff's evidence showing a Connecticut broker was, as the defendant contends, "stale." At the October 17, 2014 proceeding in aid of execution in Florida, the defendant confirmed that the account had a Connecticut broker. The plaintiff filed its application for a turnover order on May 6, 2015. It is reasonable to conclude that, at the time of the application's submission, the account was still managed by a Connecticut broker. The defendant, moreover, offered no admissible evidence to controvert that fact.

We must also reject the defendant's argument that the court improperly excluded an affidavit executed by him from evidence. The following evidence is relevant to this argument. The defendant did not personally appear at the hearing on the plaintiff's application. His attorney, however, sought to introduce as an exhibit an affidavit executed by the defendant attesting that, subsequent to the Florida hearing in aid of execution in which the defendant represented that the trust account had a Connecticut broker, he "decided to transfer the management of the [t]rust account to the Goodhue Advisory Group [located in New York] within UBS." The plaintiff objected to the affidavit as hearsay. The defendant did not dispute that the affidavit was hearsay, nor did he contend that it fell within an exception to the hearsay rule. See Conn. Code Evid. § 8-1 et seq. Consequently, the court did not admit the affidavit as an exhibit.

On appeal, the defendant does not dispute that the affidavit was hearsay and that it did not fall within an exception to the rule excluding such evidence. Rather, he argues that "[i]n determining whether a court has personal jurisdiction over a defendant, it is proper to consider affidavits submitted in demonstrating jurisdiction or lack thereof." To the extent that the defendant's argument depends on the interpretation of law, our review is plenary. See *DeLeo* v. *Nusbaum*, 263 Conn. 588, 593, 821 A.2d 744 (2003).

The defendant cites two cases, *Pitruzello* v. *Muro*, 70 Conn. App. 309, 798 A.2d 469 (2002), and *Villager Pond, Inc.* v. *Darien*, 54 Conn. App. 178, 734 A.2d 1031

(1999), in support of his argument. Those cases are, however, inapposite, as they illustrate that, in the context of a motion to dismiss; see Practice Book § 10-30; the court will admit undisputed facts set forth in supporting affidavits. See *Pitruzello* v. *Muro*, supra, 312; cf. *Villager Pond, Inc.* v. *Darien*, supra, 182. If, in light of those affidavits and other evidence, "a jurisdictional determination is dependent on the resolution of a critical factual dispute," the court will conduct an evidentiary hearing in connection with the motion to dismiss in order to determine jurisdictional facts. *Conboy* v. *State*, 292 Conn. 642, 652, 974 A.2d 669 (2009).

Those procedures, however, were inapplicable to the present case because the court was not proceeding on a motion to dismiss. The court, therefore, was not required to consider, much less credit, the defendant's affidavit.

It was within the court's discretion to conduct an evidentiary hearing; see *State* v. *Nguyen*, 253 Conn. 639, 653, 756 A.2d 833 (2000); and the defendant does not argue that the court abused its discretion by doing so. He also, as previously mentioned, offers no rationale for why the affidavit was not hearsay or why it fell within a hearsay exception. We, therefore, do not disturb the court's decision to exclude the affidavit from evidence on the basis of hearsay. Accordingly, this argument is not persuasive.

For the foregoing reasons, we reject the defendant's claim that the trial court was without personal jurisdiction in this matter.

II

The defendant's second claim is that the turnover order improperly deviated from the court's prior oral ruling granting the plaintiff's application for that order. See *Sanzo* v. *Sanzo*, 137 Conn. App. 216, 220, 222, 48 A.3d 689 (2012) (substantive alteration of judgment constitutes opening of judgment; court may not, sua sponte, open judgment). We disagree.

The following evidence is relevant to this claim. In its application for the turnover order, the plaintiff requested that the court order the defendant and UBS to "transfer to the levying officer cash or marketable securities held by UBS in the name of or for the benefit of [the defendant], including without limitation, the assets in the [trust] . . . sufficient to satisfy [the plaintiff's] judgment . . . ." At the conclusion of the hearing, the following exchange occurred:

"The Court: . . . [J]ust so we're clear, the execution that the [plaintiff] is looking for is an execution that you want to serve on UBS here in Connecticut to execute on whatever account is held either for [the defendant or] for the benefit of [the defendant], including the account under the name of Marstack & Company as a trade name?

"[The Plaintiff's Counsel]: That's correct, Your Honor.

"The Court: All right. . . . I am going to grant the application and—so the execution will issue on UBS in Stamford on whatever account there is held in—for the benefit of [the defendant] under the name of Marstack & Company as the trade name. . . .

"[The Defendant's Counsel]: Just to clarify your ruling, Your Honor, this is solely for any UBS accounts for [the defendant] under the trust of Marstack & Co. held in Stamford, Connecticut?

"[The Court]: Well, it's going to be served on UBS. . . . [S]o, the execution is being served here. . . . So, for our purposes, I've granted the application for an execution. It will be served on UBS at their offices in Stamford . . . ."

Later on the same day, the court issued its written order, which, tracking the language in the plaintiff's application, directed UBS to "forthwith transfer to the levying officer cash or marketable securities held by UBS in the name of or for the benefit of [the defendant], including without limitation, the assets in the [trust] d/b/a Marstack & Co., sufficient to satisfy [the plaintiff's] Judgment . . . ." Thereafter the defendant filed an emergency motion for a stay of execution and a motion for clarification on the ground that the court's written order differed substantively from its oral ruling. Specifically, the defendant contended that the written order "enlarges UBS' responsibilities to other accounts aside from Marstack & Co. In addition, the order directs UBS in general to take action against the accounts of [the defendant]. However, the court specifically limited its order to UBS in Stamford. As such, the court was limiting its ruling to accounts in Connecticut and not UBS in its entirety." The court granted the motion for clarification and clarified its written order as follows: "The court's written order, entered following the hearing on June 22, 2015, is consistent with the court's ruling from the bench granting, without limitation, the plaintiff's application for an execution and order in aid of execution." The court, without providing its reasoning, denied the defendant's motion for a stay.

On appeal, the defendant asserts that the turnover order improperly deviated from the court's oral ruling in two ways. First, he argues that the order should have been directed specifically to UBS's Stamford office, instead of to UBS in general. Second, he argues that the order should have expressly limited execution to assets in the trust account, instead of, as the order provides, "marketable securities held by UBS in the name of or for the benefit of [the defendant], *including without limitation*, the assets in the [trust] d/b/a Marstack & Co. . . . ." (Emphasis added.) Our review of this issue is plenary. See *State* v. *Denya*, 294 Conn. 516, 529, 986 A.2d 260 (2010).

We disagree with the defendant for the following reasons. With respect to his argument that the court erred by not directing the turnover order specifically to UBS's Stamford office, the defendant misunderstands the contents of the oral ruling and written order. The plaintiff's application for the order identified "UBS Financial Services, Inc.," as the garnishee. The undisputed evidence presented at the hearing identified UBS's Stamford office as "UBS Financial Services Inc.," with an address at 677 Washington Boulevard in Stamford. Accordingly, the court's turnover order lists the garnishee as "UBS Financial Services, Inc." There is no indication that UBS's office *in Stamford* is its own corporation or other legally distinct entity. Ordering "UBS Financial Services, Inc.," to turn over the defendant's property therefore was appropriate. To the extent that, in its oral ruling, the court ordered that *service of process* be directed at "UBS in Stamford," that is not inconsistent with the order because the order did not address how and where process was to be served. The defendant was free to file a motion for articulation with respect to the service of process issue, but failed to do so. See Practice Book § 66-5. Accordingly, there is no inconsistency between the court's oral ruling and the turnover order with respect to this issue.

We likewise find unpersuasive the defendant's argument that the court improperly deviated from its oral ruling by ordering the turnover of the defendant's securities "including without limitation" those in the trust account. We observe that the oral ruling was ambiguous as to this particular matter. On the one hand, the court understood that the plaintiff was requesting the turnover of assets, including but not limited to the trust account because it asked, just prior to granting the application: "[J]ust so we're clear, the execution that the [plaintiff] is looking for is an execution . . . on whatever account is held either for [the defendant or] for the benefit of [the defendant], *including* the account under the name of Marstack & Company as a trade name?" (Emphasis added.) On the other hand, the court shortly thereafter stated that "the execution will issue on UBS in Stamford on whatever account there is held in—for the benefit of [the defendant] under the name of Marstack & Company as the trade name." Any ambiguity, however, was resolved by the written turnover order, which, as previously mentioned, directed UBS to "forthwith transfer to the levying officer cash or marketable securities held by UBS in the name of or for the benefit of [the defendant], including without limitation, the assets in the [trust] . . . ." "[S]ubstantial deference is accorded to a court's interpretation of its own order. . . . Accordingly, we will not disturb a trial court's clarification of an ambiguity in its own order unless the court's interpretation of that order is manifestly unreasonable." (Citations omitted.) *State* v. *Denya*, supra, 294 Conn. 531. The court's interpretation

of the ambiguous oral ruling adhered to one reasonable construction of it. Accordingly, we conclude that the order did not improperly deviate from the court's oral ruling in this manner.[7]

For the foregoing reasons, the defendant's second claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his appellate brief, the defendant makes two more claims: that the court improperly excluded from evidence an affidavit offered by him, and that the plaintiff "[was] improperly forum shopping" by seeking relief in Connecticut. We view the former claim as an argument in support of the defendant's first claim rather than as a separate claim, and, therefore, address it as part of the first claim. The latter claim is substantively indistinct from the first claim, and, therefore, our analysis of the first claim disposes of it.

[2] The Depository Trust Company is "a limited purpose trust company organized under New York law for the purpose of acting as a depository to hold securities for the benefit of its participants, some 600 or so broker-dealers and banks." Uniform Commercial Code, art. 8, prefatory note.

[3] General Statutes § 52-350a (12) defines a "leveling officer" as "state marshal or constable acting within such marshal or constable's geographical jurisdiction or in IV-D cases, any investigator employed by the Commissioner of Social Services."

[4] Situs is "[t]he location or position (of something) for legal purposes . . . ." Black's Law Dictionary (7th Ed. 1999).

[5] One note about terminology: Traditionally, territorial jurisdiction had three categories: in personam, in rem, and quasi in rem. These terms, however, "have only modest analytic utility in modern context. This is because the specific distinctions between them as bases of jurisdiction have to a large extent been obliterated." Restatement (Second), Judgments § 5, comment b, p. 68 (1982). In the modern context, "[j]urisdiction in personam, in rem, and quasi in rem are forms of personal jurisdiction." Restatement (Fourth), Foreign Relations Law of the United States § 302, comment (2016). Hereinafter, we, therefore, refer to "personal jurisdiction" instead of the traditional categories.

[6] It is not our conclusion that UBS's status as a securities intermediary under § 42a-8-102 (a) (13) is enough, in and of itself, to confer personal jurisdiction in any state in which UBS has an office. Cf. *Aurelius Capital Partners, LP* v. *Republic of Argentina*, Docket No. 07 CIV. 11327 (TPG), 2010 WL 768874, *4 (S.D.N.Y. March 5, 2010) ("[T]he question remains under the UCC, as to how to interpret 'securities intermediary' in a situation of an international bank with the home office in New York and branches abroad. The term is not self-defining."). It may very well not be fair, for instance, to hale the defendant into court in a postjudgment enforcement proceeding in a state where the only connection is the fact that there is a UBS branch office there. By contrast, that is not an issue in the present case because of the undisputed evidence that the trust account was managed directly out of the Stamford UBS office.

[7] The defendant also argues that, irrespective of whether the written order deviated from the oral ruling, the order was contrary to law because it "directs UBS to transfer the assets contained in the [trust] into [Connecticut] regardless of the assets' location outside the [s]tate." (Emphasis omitted.) In part I of this opinion, we concluded that the court had authority to order UBS to turn over the defendant's securities, even though the certificates for those securities may be in New York. For the reasons provided in support of that conclusion, we reject this argument.